MATTHEW J. ROACH, and o/b/o,
DARLENE DEVENDORF and our
NATURAL CHILD, A.R.

                                      Plaintiffs,

                                                              5:15-CV-408
                    v.                                        (LEK/ATB)

JENNIFER CLARK, et al.,

                                      Defendants.

MATTHEW J. ROACH, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff

Matthew J. Roach. (Dkt. No. 1)  Plaintiff Roach has also filed an application to proceed

in forma pauperis ("IFP") and appears to ask for appointment of counsel in the

complaint. (Dkt. Nos. 1 at 5, Dkt. No. 5).[1]  For the following reasons, this court will

grant plaintiff's IFP application, but will recommend dismissal pursuant to 28 U.S.C.

§ 1915(e)(2)(B)(i)-(iii).

---

[1] Plaintiff originally submitted an incomplete application to proceed IFP. (Dkt. No. 2).  Based
upon the defects in his application, the court ordered administrative closure of the action until plaintiff
filed his properly completed form at Dkt. No. 5.  The case was then reopened for initial review. (Dkt.
No. 6).

## I.    IFP Application/Representation

A review of plaintiff Roach's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2).  This court agrees and finds that plaintiff Roach is financially eligible to proceed IFP.  Plaintiff Roach appears to be attempting to bring this action on behalf of two other individuals: Darlene Devendorf and a minor child, A.R.  Although the court may infer that the minor child cannot afford to pay the filing fee, Ms. Devendorf has not filed an IFP application, and this court cannot make such an assumption about her.

It is well-settled that a person who has not been admitted to practice law may not represent anyone other than himself.[2] *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007). *See also* 28 U.S.C. § 1654.  Therefore, plaintiff Roach may not represent either Ms. Devendorf or A.R.  While Ms. Devendorf could sign the complaint, apply for IFP, and represent herself if she chose to do so, a minor child may not,[3] and plaintiff Roach may not represent his minor child. *Armatas v. Maroulleti*, 484 F. App'x 576, 577

---

[2] An limited exception exists if an individual appears for an estate in which there are no other beneficiaries or creditors. *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010).  The exception is not applicable to this case.

[3] *See Cheung v. Youth Orchestra Found. of Buffalo*, 906 F.2d 59, 61 (2d Cir. 1990) (a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child because the choice to appear pro se is not a true choice for minors who, under state law, cannot determine their own legal actions) (citing Fed. R. Civ. P. 17(b)).  The court in *Cheung* further stated that it is not in the interests of minors or incompetents that they be represented by non-attorneys. *Id.* "Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected." *Id.*

(2d Cir. 2012); *Tindall v. Poultney High School Dist.*, 414 F.3d 281, 284 (2d Cir. 2005). The court will proceed to consider the complaint as it applies to plaintiff Roach and will consider plaintiff Roach's request for appointment of counsel below.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when

plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II.  **Complaint**

The complaint is very rambling, and the court will attempt to summarize the claims that plaintiff may be making, keeping in mind that great liberality must be shown to pro se plaintiffs. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein). Plaintiff names eleven defendants. Most of the defendants are either caseworkers or supervisors in the Onondaga County Department of Children and Family Services. ("CFS"): Jennifer Clark (Caseworker); Mary Woodfork (Supervisor); Christopher Warren (Supervisor); Virginia Snyder (Supervisor); Mararita Gonzalez (Supervisor); Jennifer "Doe" (Top Investigator 2006); John or Jane "Doe" (Top Investigator

Supervisors 2006); David Sutkowy (Commissioner of CFS); CFS ("Municipality")[4];

Ronnie White, Jr. (Deputy County Attorney); and Michelle Pirro Bailey (Family Court

Judge).

The court has interpreted plaintiff's complaint as a challenge to what appears to

be the termination of parental rights. The first two pages of plaintiff's factual statement

are simply a criticism of the CPS system, including plaintiff's statement that the

Department of Justice is an "allied party with this plaintiff in the endeavor to clean up

New York and fix the 'Broken System.'" (Complaint "Compl." at 5-6). Plaintiff alleges

that defendant Jennifer Clark "has failed and neglected her duties to strengthen the

parental child relationship" between plaintiff, Ms Devendorf, and their child A.R.[5] (*Id.*

at 6-7). Plaintiff alleges that defendant Jennifer Clark has maliciously interfered with

---

[4] The court notes that plaintiff cannot sue the CFS as an entity itself. Departments that are merely administrative arms of a municipality do not have a legal identity separate from the municipality and may not sue or be sued. *Rose v. County of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. Nov. 9, 2012) (citing *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y.2002) (dismissing claim against the police department); *Umhey v. County of Orange*, 957 F. Supp. 525, 530 31 (S.D.N.Y. 1997) (dismissing case against the County Board of Ethics). Therefore, claims asserted under 42 U.S.C. § 1983 will be dismissed against an administrative department or sub-division of a municipality or county. *Id. See also Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (because the county sheriff's office was an administrative arm of the county, it was not the appropriate party in a section 1983 action)). In this case, plaintiff has written "municipality" under CFS, thus, the court will assume that plaintiff is attempting to sue Onondaga County, the proper defendant.

[5] Plaintiff may be referring to N.Y. Fam. Ct. Act § 614(1)(c), which is entitled "Originating proceeding for the commitment of the guardianship and custody of a permanently neglected child." This section is contained in Part 1 (Permanent Termination of Parental Custody by Reason of Permanent Neglect) of Article 6 (Permanent Termination of Parental Rights, Adoption, Guardianship and Custody). Section 614 provides that CPS may initiate a proceeding for guardianship and custody under certain circumstances. The agency must allege in its petition, inter alia, that it made "diligent efforts" to encourage and strengthen the parental relationship. *Id.* § 614(1)(c).

the family relationship by committing "fraudulent acts," based on her own personal problems. (Compl. at 7). Plaintiff then alleges that supervisors, Mary Woodfork, Victoria Snyder, and Margarita Gonzalez have failed to adequately train Jennifer Clark. (*Id.*) Plaintiff alleges that defendant Jennifer Clark has "conspired" with these supervisors "to provide only a minimal insufficient service to plaintiff's family."[6] (*Id.* at 8).

Plaintiff alleges that "the Commissioner"[7] of CPS signed a petition to terminate plaintiff's parental rights that was "brought" by defendant Assistant County Attorney Ronnie White, Jr. (Compl. at 10). Plaintiff claims that the petition was brought "fraudulently" in violation of plaintiff's due process rights; his right to effective assistance of counsel; and his right to be free from cruel and unusual punishment. (Compl. at 10-11). Plaintiff claims that these allegedly fraudulent proceedings began in December of 2005 or January of 2006, after a false report of child abuse was filed with the New York State Abuse/Neglect Registry. (Compl. at 11). Plaintiff claims that the report was filed by a jealous neighbor[8] who wanted plaintiff's remodeled apartment.[9]

---

[6] Plaintiff then digresses into a discussion of an alleged "policy" to provide minimal services. Plaintiff claims that this "policy" is an attempt to obtain federal funds to keep CPS operating, for paychecks and bonuses and to provide the employees of CPS with "expense accounts for their personal benefit" instead of the clients' benefit. (Compl. at 8-9).

[7] The court assumes that plaintiff is referring to defendant Commissioner Sutkowy because plaintiff does not mention his name or the date that he allegedly signed this "petition." (Compl. at 10).

[8] Plaintiff later appears to state that Ms. Devendorf told him that the false report was made by this neighbor. The neighbor made the complaint to the Abuse/Neglect Registry and to a friend who

(Compl. at 11-12). Plaintiff claims that this neighbor has also made more recent complaints against her own step-daughter and has "used" defendant Jennifer Clark, who is A.R.'s "current" caseworker. (Compl. at 14).

As a result of this false report in December of 2005 or January of 2006, defendant Jennifer "Doe" ("Top Investigator") came to plaintiff's apartment, accompanied by the Syracuse Police. (Compl. at 14). Plaintiff alleges that defendant Jennifer Doe then asked Darlene Devendorf, if defendant Doe could perform a body search of A.R.[10] Plaintiff alleges that defendant Doe began to conduct an inappropriate search of the child and would not allow Ms. Devendorf to be present.[11] Plaintiff states that ultimately defendant Doe found no signs of abuse on A.R., and the complaint to the Abuse/Neglect Registry was declared "unfounded." (Compl. at 15).

However, plaintiff speculates that as a result of this incident, a conspiracy against him began. This speculation is based upon a subsequent proceeding to terminate plaintiff's parental rights brought by CPS, "collaterally based upon fraudulent

_____

worked at CPS. (Compl. at 13).

[9] It is unclear how the remodeled apartment would relate to plaintiff's claims, however, plaintiff spends almost an entire page of his complaint detailing the renovations he made to his apartment which made it attractive to his jealous neighbor. (Compl. at 12). Plaintiff also describes all the things that he did for his son, A.R. to "nurture" the child. (Compl. at 12-13).

[10] It is unclear whether plaintiff Roach was present during any of this incident.

[11] Although it is not relevant to this court's decision, it is unclear how plaintiff or Ms. Devendorf were aware that the search was inappropriate or how either of them could describe how defendant Doe was conducting the search, when plaintiff stated that Ms. Devendorf was not allowed to be present for the search.

grounds," because they had no basis for bringing such a proceeding. (Compl. at 15-16).

Plaintiff alleges that "effective" counsel was appointed, who told plaintiff that counsel

would be able to get the neglect petition dismissed because it was based upon grounds

that had been declared "unfounded." (Compl. at 16). However, plaintiff states that this

assigned attorney was "removed" shortly thereafter. Plaintiff claims that "ever since,"

counsel has refused to look at the fact that the "original petition" for neglect was

brought based on an "unfounded" report.[12] (*Id.*)

It also appears that the "current" neglect/termination of rights proceeding was

recently and is still pending because plaintiff alleges that defendant Ronnie White, Jr.

brought this "current petition" improperly, and plaintiff later refers to the February,

2015 proceeding before Judge Pirro-Bailey. (Compl. at 17, 19). Plaintiff claims the

current petition is one to terminate parental rights, and it is procedurally improper

because it was signed by Commissioner David Sutkowy and "brought" by Ronnie

White, Jr. (*Id.*) Plaintiff seems to claim that CPS should have "brought" the petition,

because it was the "authorized" agency, and that such action was "outside the

jurisdiction of the Onondaga County Attorney's Office." (*Id.*) Plaintiff claims that

defendant Sutkowy signed the petition without knowing the "full facts and

---

[12] The complaint gets more confusing at ths point because plaintiff states that the "original petition" for neglect was brought "on grounds not raised by the New York State Abuse/Neglect Register" which were "unfounded 'Abuse Report'. . . ." (Compl. at 16). Plaintiff did not mention an "original petition." He only cites to a report which was determined to be "unfounded."

circumstances" and "without fully investigating and leaving no stone unturned." Plaintiff also alleges that defendant White failed to properly investigate the facts. (Compl at 17-18).

Plaintiff states that "these coordinating officials" have allowed violations of plaintiff's due process rights, his right to the effective assistance of counsel, and his right to be free from cruel and unusual punishment. (Compl. at 18). Plaintiff claims that defendant Family Court Judge Michelle Pirro Bailey "unbeknownst to her," lacked jurisdiction to hear a permanent neglect proceeding in her court on February 4, 2015. (Compl. at 19). Plaintiff states that fraud and trickery were used against Ms. Devendorf, who apparently signed a "judicial surrender instrument in October of 2014," which also violated her rights under the Fifth, Sixth, and Eighth Amendments . . . ."[13]

The complaint contains three causes of action. (Compl. at 20-21). Plaintiff alleges that he was denied due process because of the "fraudulent" neglect proceeding which had no foundation or basis because the "original 'abuse'" complaint was determined to be unfounded (First Cause of Action); plaintiff was denied the effective assistance of counsel, which should be equal to that required in a criminal proceeding (Second Cause of Action); and plaintiff was denied his right to be free from cruel and

---

[13] As stated above, plaintiff Roach may not represent Ms. Devendorf or their child. Thus, these claims are not being considered.

unusual punishment because the effect of defendants' actions caused him years of

unnecessary pain due to the mismanagement of A.R.'s case, which should have been

closed in the first instance because the original complaint was based on "fraud" (Third

Cause of Action). (Compl. at 20).

     Plaintiff moves for a Temporary Restraining Order ("TRO") to prevent Family

Court Judge Pirro-Bailey from terminating plaintiff's parental rights and requests

monetary relief. (Compl. at 19-19-A, 21).  Plaintiff claims that if the family court

terminates his parental rights, he will suffer mental and emotional damage due to the

"separation of this Father-Son Loving-Bonding-Nurturing Relationship which will

damage [plaintiff's] family unit." (Compl. at 19-A).

## III.   <u>Subject Matter Jurisdiction</u>

### A.   **Legal Standards**

     There are certain situations in which a federal court must abstain from interfering

with pending state court proceedings. *Younger v. Harris*, 401 U.S. 37, 43-45 (1971).  In

*Younger*, the Court held that when there is a parallel criminal proceeding in state court,

the federal court must refrain from enjoining the state prosecution. *Id.  Younger*

abstention has been expanded to include state civil proceedings which are akin to

criminal prosecutions[14] and state court proceedings which implicate a state's interest in

---

[14] *Huffman v. Pursue, Ltd*., 420 U.S. 592 (1975).

enforcing the orders and judgments of its courts.[15]   Until 2013, the abstention analysis

involved determining (1) whether there was an ongoing state proceeding; (2) whether

an important state interest was implicated; and (3) whether the plaintiff had an avenue

open for review of constitutional claims in state court. *See Middlesex County Ethics*

*Comm. v. Garden State Bar Assn.*, 457 U.S. 423, 432 (1982); *Parent v. New York*, 485

F. App'x 500, 503 (2d Cir. 2012) (quoting *Younger, supra*; *Liberty Mut. Ins. Co. v.*

*Hurlbut*, 585 F.3d 639, 647 (2d Cir. 1997)).

In *Sprint Communications, Inc. v. Jacobs*, __ U.S. __, 134 S. Ct. 584, 588

(2013), the Court revisited the analysis required to invoke abstention under *Younger*.

In *Sprint*, the Court rejected the three-part test in favor of a "categorical approach." *Mir*

*v. Shah*, 569 F. App'x 48, 51 (2d Cir. 2014) (citing *Sprint*, 134 S. Ct. at 591-94).

*Younger* abstention is triggered only by three categories of state court proceedings: (1)

state criminal prosecutions; (2) civil proceedings that are akin to criminal proceedings;

and (3) civil proceedings that "implicate a State's interest in enforcing the orders and

judgments of its courts." *Id.* (quoting *Sprint*, 134 S. Ct. at 588).   In *Sprint*, the Court

used state-initiated custody proceedings in its analysis[16] as an example of civil

proceedings which are akin to criminal proceedings. 134 S. Ct. at 592 (citing *Moore v.*

*Sims*, 442 U.S. 415, 419–420 (1979) (state-initiated proceeding to gain custody of

---

[15] *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987).

[16] *Sprint* did not involve custody proceedings.

children allegedly abused by their parents)). *See also Davis v. Baldwin*, 594 F. App'x 49, 51 (2d Cir. 2015) (same).

## B. Application

In this case, plaintiff is requesting that this court interfere with a pending Family Court proceeding in which he alleges that the court is about to determine whether to terminate plaintiff's parental rights. The Family Court proceeding is a state-initiated proceeding to decide whether to permanently terminate parental rights, involving an investigation and a formal petition. *See Sprint*, 134 S. Ct. at 592 (abstention applies to cases where investigations are involved, culminating in the filing of a formal complaint). This case is clearly a situation in which abstention is appropriate under *Sprint*.[17] Because this court has no jurisdiction to issue any kind of an injunction, interfering with the Family Court proceeding, this court need not analyze the separate factors required for preliminary injunctive relief pursuant to Fed. R. Civ. P. 65.

*Younger* abstention does not apply to claims for monetary damages, thus, this court will proceed to consider plaintiff's claims for damages.[18] The court will also consider separate bases for dismissal of plaintiff's claims.

---

[17] Abstention would have been appropriate under the former standard as well.

[18] While it is true that *Younger* does not apply to monetary damages, to the extent that damages would be available, the court would have to stay the action, pending the state court's decision. *See Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2008) (stay of damage proceeding may be appropriate when declaratory and injunctive relief are dismissed due to abstention).

## IV.  Judicial/Prosecutorial Immunity

### A.  Legal Standards

With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireless v. Waco*, 502 U.S. 9, 9-10 (1991).  Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004).  Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).  Judicial immunity is immunity from suit, not just immunity from the assessment of damages.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

Prosecutors also enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective

prosecution as well as for any misconduct in the presentation of evidence to the Grand Jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

County attorneys who initiate and prosecute child protective orders or litigate family court petitions, are also entitled to absolute immunity. *Cornejo v. Bell*, 592 F.3d 121, 127-28 (2d Cir. 2010) (citing *Walden v. Wishengrad*, 745 F.2d 149, 152 (2d Cir. 1984)). *See also Baumgarten v. Suffolk County*, No. 12–CV–171, 2013 WL 3973089, at *4 (E.D.N.Y. July 31, 2013) (citing inter alia *Cetenich v. Alden*, 11 F. Supp. 2d 238, 241 (N.D.N.Y. 1998) (extending absolute immunity to municipal attorneys who initiate civil actions to enforce municipal housing codes)).

### B. Application

Plaintiff names Judge Pirro-Bailey of the Onondaga Family Court. Plaintiff states that Judge Pirro-Bailey "lacked jurisdiction" to hear the permanent neglect proceeding in February of 2015. However, Family Court has jurisdiction to hear

14

neglect proceedings,[19] and plaintiff does not explain why Family Court Judge Pirro-Bailey would have lacked jurisdiction to hear the case.  Thus, plaintiff's claims for damages against Judge Pirro-Bailey must be dismissed with prejudice based upon absolute immunity.

Plaintiff's claims against Deputy County Attorney Ronnie White, Jr. must also be dismissed based upon absolute immunity.  Plaintiff claims only that defendant White brought the petition to terminate plaintiff's parental rights. (Compl. at 10, 17).  Plaintiff does not claim that defendant White engaged in, or is liable for, any investigatory activities.  Plaintiff only alleges that "such petition is outside the scope of the Onondaga County Attorney's Office." (*Id.* at 17).  Plaintiff cites no basis for this allegation.  However, even if the allegation is true, the only action alleged against defendant White is that he improperly brought a petition before the court.[20]  As stated above, the initiation of cases before the court, improperly or otherwise, is protected by absolute immunity. *Cornejo v. Bell*, 592 F.3d at 127-28.  Thus, the action for damages must be dismissed with prejudice as against defendant White.

---

[19] The section governing proceedings for the commitment of the guardianship and custody of a permanently neglected child is part of the "Family Court Act." N.Y. Fam. Ct. Act, Art. 6, Pt. 1 § 614. In fact, Family Court has "exclusive original jurisdiction over proceedings . . . alleging . . . the neglect of a child." N.Y. Fam. Ct. Act § 1013(a). *See Ogunbao v. City of New York*, No. 12-CV-428, 12-CV-6188, 2014 WL 60009, at *5 (E.D.N.Y. Jan. 7, 2014) (citing N.Y. Fam. Ct. Act. § 1013(a) and N.Y. Const. Art. 6, § 13(b)).  It is unclear how plaintiff alleges that Judge Pirro-Bailey was without jurisdiction.  If plaintiff is attempting to claim that the petition before Judge Pirro-Bailey was brought improperly or fraudulently, this does not affect her "jurisdiction."

[20] In fact, plaintiff alleges that defendant White failed to investigate the facts. (Compl. at 18).

## V.    Ineffective Assistance of Counsel

Although plaintiff mentions the term "ineffective assistance of counsel,"[21] plaintiff does not name as a defendant any attorney who represented him. Plaintiff cannot sue the other defendants for actions or omissions by his court-appointed attorney. Even if plaintiff had named an attorney, the law is clear that generally, attorneys, whether with a legal services organization, court-appointed, or privately retained, do not act under color of state law for purposes of section 1983.[22] *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Krug v. McNally*, 368 F. App'x 269 (2d Cir. 2010).

It is also completely unclear to what plaintiff is referring when he states that the defendants denied him the ineffective assistance of counsel. (Compl. at 18). Two pages prior to this conclusory assertion, plaintiff stated that "subsequently effective counsel was provided to plaintiff's by the first name of Eric (last name unknown)." (Compl. at 16). Plaintiff appears to allege that counsel told plaintiff he would be able to get the neglect petition dismissed, but then was "removed." Plaintiff states that ever since that time, attorneys have refused to look at particular facts that plaintiff wanted counsel to

---

[21] Under New York law, the Family Court affords protections equivalent to the constitutional standard for effective assistance of counsel afforded to criminal defendants because the potential consequences of the Family Court decisions "are so drastic." *See Brown v. Gandy*, 125 A.D.3d 1389, 3 N.Y.S.3d 486, 487-88 (4th Dep't 2015).

[22] In order to state a claim under 42 U.S.C. § 1983, the defendant must act under color of state law in violating the plaintiff's constitutional rights. *Rae v. City of Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010).

16

address. (*Id.* at 16-17). In addition to not naming an attorney-defendant and the lack of state action, plaintiff has asserted only conclusory allegations regarding the assistance of counsel.[23] Conclusory allegations are insufficient to state a claim under the civil rights statutes. *Krug*, 368 F. App'x at 270 (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002)). Thus, plaintiff's second cause of action, alleging "ineffective assistance of counsel" must be dismissed with prejudice.

## VI. Cruel and Unusual Punishment

### A. Legal Standards

The Eighth Amendment was designed to protect those convicted of crimes, and consequently, applies "'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.'" *Jackson v. Johnson*, 118 F. Supp. 2d 278, 286-87 (N.D.N.Y. 2000) (citing *Whitley v. Albers*, 475 U.S. 312, 318 (1986)). Thus, the Eighth Amendment protects only convicted prisoners. *Robinson v. Bratton*, No. 14-CV-2642, 2014 WL 3496460, at *5 (E.D.N.Y. July 8, 2014) (citing *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)).

### B. Application

Plaintiff states that he (and his family) were denied their right to be free from cruel and unusual punishment because the defendants' acts caused them "years of

---

[23] If plaintiff is attempting to allege that the Judge Pirro-Bailey failed to appoint effective counsel, any such claim against the Judge would be barred by absolute immunity.

unnecessary wanton infliction of pain and anguish and emotional damage . . . ."
(Compl. at 20). Plaintiff is not complaining about conditions of confinement or of
anything related to the punishment for the crime for which he is incarcerated.[24] Thus,
plaintiff does not state an Eighth Amendment claim as against any of the defendants. In
any event, it is completely unclear to what punishment or harm plaintiff is referring. If
the caseworker defendants did not "close" A.R.'s file in 2005 or 2006, it is unclear how
this omission caused pain and anguish for ten years. Plaintiff does not include the date
of the most recent petition, but the court notes that the Family Court proceeding is
alleged to have been filed in February of 2015. There is no indication that an Eighth
Amendment analysis is available or appropriate.

To the extent that plaintiff argues that the termination of parental rights violates
the Eighth Amendment, it has been held that such proceedings are not punitive in
nature, but rather are designed to address the needs and welfare of children. *See In re
Imani, J.*, 29 A.D.3d 467, 468, 817 N.Y.S.2d 6, 7 (1st Dep't), *lv. to appeal den.*, 7
N.Y.3d 842, 824 N.Y.S.2d 208 (2006), *cert. denied sub nom.*, *Monique J. v. Children's
Aid Soc.*, 549 U.S. 1228 (2007). *See also Skalaban v. Dep't of Children and Families*,
314 F. Supp. 2d 101, 109 (D. Conn. 2004) (dismissing an Eighth Amendment claim
based on a "false" report by the Connecticut Department of Children and Families).

---

[24] Plaintiff was convicted for criminal possession of a weapon and is currently incarcerated on
those charges. www.nysdoccslookup.doccs.ny.gov

Thus, plaintiff's third cause of action, based upon the Eighth Amendment may be dismissed with prejudice.

## VII.   Statute of Limitations

### A.   Legal Standards

The statute of limitations for section 1983 actions is the "general" statute for personal injury actions in the state in which the cause of action arose. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989).  In New York, it is well settled that the applicable statute of limitations is three years under N.Y. C.P.L.R. § 214(5). *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).  The statute of limitations begins to run on the date that plaintiff's claim accrued, which is the date that plaintiff has a complete and present cause of action and can file suit and obtain relief. *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

### B.   Application

In his complaint, plaintiff claims that his problems began in December of 2005 or January of 2006, when Ms. Devendorf told plaintiff that their jealous neighbor made a false report to the Statewide Central Register of Child Abuse and Maltreatment ("SCR").[25] (Compl. at 13).  Defendant "Jennifer Doe," who plaintiff claims was a "Top Investigator" arrived at plaintiff's home with the Syracuse Police to investigate the

---

[25] Plaintiff refers to this as the New York State Abuse/Neglect Registry, but it is appropriately known as the SCR. www.http://acts.ny.gov/main/cps.asp#top.

allegedly "false" report. (*Id.*) Plaintiff claims that defendant Jennifer Doe began to

perform an inappropriate search of A.R., without allowing his mother to be present.

(Compl. at 15). However, plaintiff claims that defendant Jennifer Doe did not find any

signs of abuse, and the neighbor's alleged report was determined to be "unfounded."

Plaintiff does not make any specific claims against defendant Jennifer Doe, other

than she started to perform an inappropriate search which she stopped when the police

officer pointed out that she may have been acting inappropriately. (Compl. at 15). She

did not find any signs of abuse, and plaintiff alleges that the neighbor's report was

determined to be unfounded. Plaintiff has stated no claim against Jennifer Doe, and

whatever actions were taken by defendant Jennifer Doe, they would have been taken at

the latest in January of 2006, and she took no action against plaintiff Roach. Plaintiff

brought this action in April of 2015. The statute of limitations for section 1983 claims

ran in January of 2009.

The doctrine of equitable tolling allows the court to extend the statute of

limitations past the time of expiration as necessary to avoid inequitable circumstances.

*Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (citation omitted). Equitable

tolling principles have applied when plaintiff "actively" pursued his judicial remedies,

but filed a defective pleading within the appropriate time period. *Brown v. Parkchester

S. Condominiums*, 287 F3d 58, 60 (2d Cir. 2002) (citations omitted). Equitable tolling

has also been applied where plaintiff was prevented in some "extraordinary" way from

asserting his rights, or where he asserted his rights in the wrong forum. *Johnson*, 86 F.3d at 12. In determining whether equitable tolling applies, the court must find that plaintiff acted reasonably diligently throughout the period that he seeks to toll. *Id.*

In this case, plaintiff appears to allege that he has suffered for ten years due to this conduct, but apparently has done nothing to raise any claims against defendant Jennifer Doe until now. Thus, defendant Jennifer Doe may be dismissed from this action based upon the statute of limitations.[26] Plaintiff also names a "John Doe," who is Jennifer Doe's "supervisor." There are no claims made against John Doe, and the statute of limitations has run against him for the same reasons as apply to Jennifer Doe.

## VIII. <u>Due Process</u>

### A.    <u>Legal Standards</u>

A parent's interest in the custody of his or her child is a constitutionally protected liberty interest, subject to due process protection. *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 103-104 (2d Cir. 1999) (citing inter alia *Cecere v. City of New York*, 967 F.2d 826, 829 (2d Cir. 1992)). The "integrity" of the family has also received

---

[26] The court would point out that plaintiff does not claim that he was even present during the incident that he describes. In any event, as stated above, defendant Jennifer Doe only responded to the allegedly false report, which was filed someone else. Plaintiff does not claim that she knew the report was false, and clearly, according to plaintiff she found no signs of abuse, and the report was declared to be unfounded. No constitutional violation is stated by these facts, even assuming that they are true.

protection under the Equal Protection Clause[27] and the Ninth Amendment.[28] *Id.* (citing *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)).  Notwithstanding the existence of this constitutional right, "'the right to family integrity does not include a constitutional right to be free from child abuse investigations.'" *Waterson v. Page*, 987 F.2d 1, 8 (1ˢᵗ Cir. 1993).  In addition, the failure of defendants to meet local or professional standards, without more, should not generally be elevated to the level of a constitutional violation. *Wilkinson*, 182 F.3d at 106 (citing *Young v. County of Fulton*, 160 F.3d 899, 902 (2d Cir. 1998) (the fact that DSS employees violated New York law does not necessarily give rise to a federal civil rights claim).  Even a faulty investigation does not necessarily rise to the level of an unconstitutional investigation. *Id.* (citing van *Emerik v. Chemung County Dep't of Soc. Svcs.*, 911 F.3d 863, 866 (2d Cir. 1990)).

## B.    Application

Plaintiff leaps to the assumption that "the conspiracy" began subsequent to the 2005 or 2006 incident because the Onondaga County Child Protective Unit brought,

---

[27] Plaintiff does not raise any Equal Protection claim in this case.

[28] Plaintiff does not assert the Ninth Amendment as a basis for his action, and it would not be applicable in this case.  The Ninth Amendment does not independently secure any constitutional rights that could support a section 1983 claim. *Barnett v. Carberry*, 420 F. App'x 67, 69 (2d Cir.), *cert. denied*, __ U.S. __, 132 S. Ct. 248 (2011).  The Ninth Amendment refers only to "unenumerated" rights, while claims under section 1983 must be based on specific constitutional guarantees. *Bussey v. Phillips*, 419 F. Supp. 2d 569, 586 (S.D.N.Y. 2006).  The Ninth Amendment does not apply in plaintiff's case.

what appears to be the current proceeding against him and Ms. Devendorf. (Compl. at 15-16). Plaintiff assumes that the current proceeding is based on the 2005 or 2006 incident because he claims that "they" had no basis to bring the current neglect proceeding. (Compl. at 16). The current proceeding was brought by Deputy County Attorney Ronnie White, Jr., and the petition was "signed" by Commissioner David Sutkowy. As stated above, both of these defendants are entitled to immunity because they were involved presenting the petition before the court.

Plaintiff has also named case worker Jennifer Clark and four of her superiors, claiming that they "conspired" to provide only minimal and insufficient service by CPS. Plaintiff states that defendant Clark failed in her duties to strengthen the relationship between A.R. and his parents; she "maliciously" interfered with the relationship between A.R. and his parents; she "intentionally" committed "fraudulent acts" due to her own personal problems; and she "influenced" her supervisors. Other than these general statements, plaintiff makes absolutely no specific factual statements that explain how her conduct "interfered" with the relationship between plaintiff and his son or how she "influenced" her supervisors.

Plaintiff alleges that CFS had "no grounds" to bring the current abuse proceeding because the 2005 "report" by plaintiff's jealous neighbor was determined to be unfounded, but the "file" was never closed. Plaintiff then complains that although he was provided counsel for the current neglect proceeding, "effective" counsel was

"removed," and no other attorney would "look at" the fact that the previous abuse report was "unfounded." (Compl. at 16). The court is left only to speculate about what plaintiff might be attempting to allege against defendant Clark or her four supervisors, defendants Woodfork, Warren, Snyder, and Gonzalez. It is also unclear how defendant Clark "conspired" with any of her supervisors because defendant Sutkowy signed the petition that was brought before the family court and which is currently pending.

Plaintiff seems to claim that defendant Clark violated state law by failing to provide sufficient services as required by state law and by failing to attempt to strengthen the relationship between A.R. and his parents. The court can interpret the claim as a failure to properly investigate the case or a failure to properly train caseworkers under N.Y. Soc. Svc. Law § 419. A violation of state law, by itself, cannot support a claim under section 1983. *Treistman v. Wacks*, No. 1:12-CV-1897, 2014 WL 6685473, at *7 (N.D.N.Y. Nov. 26, 2014) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)).

To the extent that plaintiff's claim could be interpreted as a "substantive due process claim," he would have to demonstrate that the caseworker's action was "so egregious" and "so outrageous" as to "shock the contemporary conscious," regardless of the fairness of the procedures used. *Southerland v. City of New York*, 680 F.3d 127, 151-52 (2d Cir. 2012) (citations omitted); *Callahan v. City of New York*, No. 13-CV-2726, 2015 WL 1119728, at *8 (E.D.N.Y. Mar. 1, 2015). Other than allegedly using a

report that was ultimately determined to be "unfounded," plaintiff makes no other allegations against defendant Clark or her supervisors. In any event, as stated above, plaintiff has been incarcerated since 2013. Defendant Clark is not responsible for separating plaintiff from his child. Thus, plaintiff has not stated a substantive due process claim against defendant Clark or any of her supervisors.

Even if the court found that an action for damages against the caseworkers could proceed, the case would not be able to proceed while the Family Court action is pending. Although abstention applies only to injunctive relief, any finding against the caseworkers would necessarily affect the validity of the case before Judge Pirro-Bailey. The court assumes that a defense to the neglect petition would be that it was based upon insufficient or fraudulent information. Furthermore, plaintiff would be unable to challenge that finding in this court pursuant to the *Rooker Feldman* doctrine[29] if the Family Court decides the issue *adversely* to plaintiff.[30] *See Phifer v. City of New York,*

---

[29] *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). A challenge under the *Rooker-Feldman* doctrine is for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 F. App'x 16, 18 (2d Cir. 2013). This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Id.* (quoting *Johnson v. Smithsonian Inst*., 189 F.3d 180, 185 (2d Cir. 1999)).

[30] An exception applies if the Family Court decides in plaintiff's favor. Then he is not considered to have "lost" in state court, and the *Rooker-Feldman* doctrine would not apply. *Graham v. City of New York*, 869 F. Supp. 2d 337, 347-48 (E.D.N.Y. 2012). If plaintiff had stated a claim against the caseworkers, a stay of the action could have been appropriate. *See Rosen v. County of Suffolk*, 53 Fed. App'x 578, 579 (2d Cir. 2002) (citing *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir.2000)).

289 F.3d 49, 57 (2d Cir. 2002).

## IX.  **Municipal Liability**

### A.  **Legal Standards**

It is well-settled that in order to establish liability of a municipality pursuant to 42 U.S.C. § 1983 for violation of civil or constitutional rights, a plaintiff must allege that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Zappala v. Albicelli*, 980 F. Supp. 635, 639 (N.D.N.Y. 1997) (citing *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 689 (1978)) (other citations omitted). Generally speaking, a single incident alleged in a complaint, especially if it involved only actors below the policymaking level, will not suffice to raise an inference of the existence of a custom or policy. *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). A municipality may not be held liable on the basis of respondeat superior alone. *Id.*

### B.  **Application**

As stated above, plaintiff sued CPS, but may not name the department itself as a defendant. To the extent that this court has interpreted plaintiff's claim against CPS as

---

However, because plaintiff has not stated a claim, the court will recommend dismissing without prejudice.

one against Onondaga County (the municipality), plaintiff has failed to state a claim. Plaintiff uses the word "policy," but cites no policy that would render the municipality liable for any of the actions described by plaintiff. He states that CPS has a policy of providing minimal services to keep the agency operating, "for paychecks to be paid and bonuses to be supplemented."[31] (Compl. at 8). Plaintiff cites absolutely no basis for his conclusory allegations. Thus, any claim against Onondaga County may be dismissed.

## X.    Appointment of Counsel

### A.    Legal Standards

There is no bright-line test for determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). A number of factors must be carefully considered by the court in ruling upon the motion. The court must first assess whether the indigent's claims seem likely to be of substance. If so, the court then considers:

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). Each case must be decided

---

[31] He also refers to "excess expense accounts" used for employees "personal benefit." (Compl. at 8). None of these allegations are even remotely related to plaintiff's claims.

on its own facts, and the court may consider any or all of the above factors in its determination. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

## B.    Application

Based upon a thorough review of the complaint, this court finds that plaintiff's complaint does not have substance, and thus, does not meet the first requirement for appointment of counsel. Therefore, plaintiff's request for counsel is denied.

## XI.    **Opportunity to Amend**

### A.    Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B.    Application

This court has found that defendants Pirro-Bailey; White; and Sutkowy are entitled to absolute immunity. This court will not recommend giving plaintiff the opportunity to amend with respect to these three defendants. Defendants Jennifer Doe and John Doe have not been identified, and the statute of limitations has run against

28

them. Thus, the court will not recommend allowing plaintiff to amend with respect to either one of these unidentified defendants.[32] Although the court is recommending dismissal without prejudice as to any damage claims against the remaining defendants, plaintiff would not be able to bring such an action until he succeeded in challenging the Family Court proceeding in state court as discussed above.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 5) is **GRANTED** for purposes of filing only, and it is

**ORDERED**, that to the extent the complaint can be read as a motion for appointment of counsel (Dkt. No. 1 at CM/ECF p.5), that motion is **DENIED**, and it is

**ORDERED**, that the Clerk substitute **Onondaga County** as a defendant in place of **Onondaga County Children and Family Services**, and it is

**RECOMMENDED**, that plaintiff's motion for a temporary restraining order (Dkt. No. 1 at CM/ECF pp.4, 22) be **DENIED**, and it is

**RECOMMENDED**, that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as against defendants Pirro-Bailey; White; Jennifer "Doe"; John "Doe"; and Sutkowy pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii), and it is

**RECOMMENDED**, that plaintiff's complaint be dismissed **WITHOUT**

---

[32] Plaintiff would have had to identify them. But, it would be futile at this time.

**PREJUDICE** as to defendants Clark, Warren, Snyder, Gonzalez, Woodfork; and Onondaga County pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: April 22, 2015

Hon. Andrew T. Baxter
U.S. Magistrate Judge